THE LOUISVILLE DRYING MACHINERY COMPANY, a corporation; CITRUS PATENTS COMPANY, a corporation, v. STATE OF FLORIDA: STATE BOARD OF EDUCATION OF FLORIDA, a corporation; STATE BOARD OF CONTROL, a corporation; and WAYNE M. NEAL.

17 So. (2nd) 703          January Term, 1944
March 31, 1944                    En Banc
Rehearing Denied April 28, 1944

*Arthur F. Robert* (Louisville, Kentucky) and *Hugh Akerman* (Orlando, Florida), for appellants.

*J. Tom Watson,* Attorney General, and *Lewis W. Petteway,* Assistant Attorney General, for appellees.

CHAPMAN, J.:

This case comes here for the second time. See State v. Neal, 152 Fla. 582, 12 So. (2nd) 590. On the former appeal we, in part, said: "The decree appealed from is reversed with directions to the chancellor to enter an appropriate decree for the appellants. He is further directed to enter such a decree as justice and equity may require as to Louisville Drying Machinery Company and as affecting it and W. M. Neal and Citrus Patents Company."

Prior to the entry of the final decree by the chancellor below the Citrus Patents Company applied for an order allowing it to file certain amendments to the former answer by adding enumerated paragraphs which application by appropriate order was denied. This adverse ruling, it is contended on appeal here, constitutes reversible error.

Paragraph 8 of the proposed amendment sets forth that the Citrus Patents Company, on September 13, 1940, while acting in good faith and relying on the representation of Dr. Wilmon Newell, as representative for the Experiment Station, purchased the patent owned by Dr. Neal and paid a valuable consideration therefor and in legal effect became a bona fide purchaser for value, without notice, of said patent. Shortly after acquiring title, it conveyed to the California Fruit Growers Exchange legal and equitable interest in and to the Neal patent into that area west of the Mississippi River, except the State of Texas. The conveyance was evidenced by written instrument between the parties which would be introduced into evidence.

Paragraph 9 of the proposed answer recited that it became the owner of the patent by purchase from Dr. Neal on September 13, 1940, and the plaintiffs (State of Florida, the State Board of Education and the State Board of Control) knew that the Citrus Patents Company had purchased the Neal Patent and the officers, agents and representatives of the plaintiffs failed to assert a contra claim to the patent until the filing of its suit on December 31, 1940, and for these reasons it would now be inequitable to permit or allow the plaintiffs to assert an adverse interest to the Neal patent so purchased by Citrus Patents Company.

Paragraph 10 recites that during the period of time that the Neal application was pending before the patent office interferences were filed requiring adjudication, precipitating large expenditures of money in order to obtain a favorable decision to the Neal application; that the Citrus Patents Company expended over $20,000.00 in obtaining a favorable adjudication to the Neal application and a disposition of the several interferences; that the Neal application would have been lost or the plaintiffs required to make these several and

heavy expenditures to obtain favorable results for the Neal application for patent and it is inequitable for the plaintiffs to become unjustly enriched at the expense of the Citrus Patents Company and the plaintiffs should be decreed to reimburse the Citrus Patents Company for these several and heavy expenditures.

Paragraph 11 makes the contention that where the Federal funds derived by the Purnell Act of Congress are used by the Experiment Station at the University of Florida, which was designated Purnell Project No. 239, and these funds paid to Dr. Neal during the interval of employment, then the experiment station holds these patent rights for the benefit and use of the citizens of the United States in contra distinction to the State interest. Paragraphs 12 and 13 of the proposed answer seek to place a restricted limitation on the use or benefits flowing from the Neal patent.

Additional proposed amendments to the answer of the Citrus Patents Company are in effect that the Citrus Patents Company is a bona fide purchaser, without notice, for a valuable consideration of the Neal Patent. We think these several contentions are clearly untenable. The terms and purpose of employment and the appropriation of funds as provided for in the Purnell Act were the law on September 13, 1940, when the Citrus Patents Company paid its money and accepted a conveyance to the patent from Dr. Neal and at the time was charged, as a matter of law, with a knowledge of the provisions of the Purnell Act.

Counsel for the Citrus Patents Company points out that the patent was purchased from Dr. Neal after a conference with Dr. Newell, as a representative of the State of Florida, the State Board of Education and the Board of Control. Dr. Newell advised that Dr. Neal had a valid legal right to convey the patent and the plaintiffs had no valid claim to the patent. The answer to the contention is that it is not shown that Dr. Newell at the time had the power or authority to act in behalf of the plaintiffs or either of them. If an authority sustaining the contention had been presented to the chancellor below no doubt a different order would have been

entered. We are not familiar with any statute granting to Dr. Newell such broad powers as are here asserted.

It is next contended that the order of the chancellor below was erroneous because it denied the oral application of counsel for The Louisville Drying Machinery Company to dismiss it from the suit on the theory that it had no interest in the controversy. We can not agree to this conclusion after a careful study of the evidence appearing in the record.

Counsel for appellants present here for adjudication thirteen separate questions. We have considered each of them in the light of the contention made. Many of them are answered by our former decision in the case at bar. We fail to find error in the record.

The decree of the chancellor below is hereby affirmed.

It is so ordered.

BUFORD, C. J., TERRELL, BROWN and ADAMS, JJ., concur.

THOMAS, J., not participating.

SEBRING, J., disqualified.

PER CURIAM:

Counsel for appellants, Louisville Drying Machinery Company, a corporation, and Citrus Patents Company, a corporation, having filed in this cause petition for rehearing and having been duly considered, it is ordered by the Court that said petition be and the same is hereby denied.

TERRELL, CHAPMAN and ADAMS, JJ., concur.

BUFORD, C. J., and BROWN, J., dissent.

SEBRING, J., disqualified.

THOMAS, J., not participating.

ON PETITION FOR REHEARING

BROWN, J., dissenting:

Upon reconsideration of this case on petition for rehearing, my view is that the petition should be granted on one ground.

When this case was before this Court in March, 1943, on an appeal by the State, et al., from a final decree rendered

by the chancellor in favor of the appellees on that appeal, who are the appellants here, the general law of the case was settled and should be adhered to, as the Court has done; but the opinion of the court on the former appeal closed with the following paragraph:

"The decree appealed from is reversed with directions to the chancellor to enter an appropriate decree for appellants. He is further directed to enter such decree as justice and equity may require as to Louisville Drying Machinery Company and as affecting it and W. M. Neal and Citrus Patents Company."

Said appeal was taken from a final decree of the chancellor, holding that Dr. Neal was employed under a general contract of employment and was under no obligation to assign his patent to his employer; that he at no time held it in trust for his employer and that Citrus Patents Company was a bona fide purchaser for value and without notice. This court reached a contrary conclusion. See State, et al., v. Neal, 12 So. (2nd) 590, 152 Fla. 582. But I think the record discloses that the Citrus Patents Company honestly believed that their purchase of the patent from Neal was a valid and binding assignment, although, as this Court held, they were, on the real facts and the law, mistaken in that belief. The decree of the chancellor was reversed with directions as above quoted.

After the case went back to the lower court, the defendant Citrus Patents Company filed a motion for leave of the court to amend its answer in certain particulars, one paragragh of which reads as follows:

"10. Further answering, this defendant says that after this suit was filed, a three-party interference was declared (No. 79789) in the United States Patent Office as between the application of said Neal (the subject matter of this suit) and a patent produced by one Daniel Vicent and another application by one Finley; that it was necessary, in order to secure an adjudication of the fact that Wayne M. Neal was the first inventor of the invention placed in issue in said interference, for this defendant, as assignee of said Neal, to employ counsel and participate in and prosecute said inter-

ference; that this defendant as a result thereof, through its counsel, filed a brief and argued a motion on behalf of the Neal application and did brief, successfully oppose, answer and argue motions filed on behalf of Vicent and Finley, and did attend numerous hearings for the taking of testimony and depositions relative to said interference in Florida, Kentucky, New Jersey and California, all of which, together with the preparation of the transcripts in said interference, entailed expense to this defendant of over $20,000.00 and as a result thereof, said interference has almost been completed and adjudicated and nothing further remains to be done except the printing of testimony taken in behalf of the Neal application, preparing and printing of a brief and arguing the case in the United States Patent Office; that had it not been for such participation by this defendant in said interference, the said application would have been lost or else the plaintiffs would have had to bear this expense; therefore it would be inequitable for the plaintiffs to become thus unjustly enriched at the expense of this defendant and therefore this defendant says that before any decree is entered in behalf of plaintiffs, they should be required to reimburse this defendant for such sums so expended."

The court below denied the motion for leave to amend in toto.

I am inclined to the view that the trial court erred in denying that portion of the motion to amend above quoted, and that on this petition for rehearing we should enter an order amending our previous order of affirmance so as to reverse the action of the court below in denying the motion to amend the answer in so far as paragraph 10 above quoted is concerned, and affirm the action of the court below in all other respects, with directions to permit said defendant to amend its answer as above pointed out in paragraph 10 of the motion and take testimony thereon, and grant such relief, if any, as the evidence adduced might support.

My views in this regard are founded upon the familiar equitable maxim that "he who seeks equity must do equity."

TERRELL, CHAPMAN and ADAMS, JJ., dissent.